```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/25/19
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT L. GELTZER, *as Bankruptcy Trustee of the Estate of Earl Michaux*,

                Plaintiff,

-v-

RIVERBAY CORPORATION, et al.,

                Defendants.

18 Civ. 11094 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion to remand a personal injury action back to state court. Robert L. Geltzer, as trustee of the bankruptcy estate of Earl Michaux, brought claims in Bronx Supreme Court against Riverbay Corporation ("Riverbay"), and others[1] stemming from Michaux's exposure to Legionella bacteria at his Bronx, New York, home. Riverbay removed the case to federal court on account of its connection to Michaux's bankruptcy proceeding. Geltzer now moves to remand. For the reasons given below, the Court grants that motion.

I. **Background**[2]

    A. **Michaux's Legionnaire's Disease Diagnosis**

Michaux lives in Co-Op City, a Bronx building complex in which many properties are managed by Riverbay. Compl. ¶¶ 1–3, 13. On September 19, 2015, Michaux was diagnosed with Legionnaire's Disease ("LD"). Geltzer Decl. at 3. Geltzer's Complaint alleges that this

---

[1] The other defendants are: Marion Scott Real Estate, Inc., Industrial Water Technologies, Inc., JUSTEQ, LLC, and The Metro Group, Inc.

[2] The following account is derived from the state court complaint, Dkt 1-4 ("Compl."), Geltzer's declaration in support of his motion to remand, Dkt. 11-1 ("Geltzer Decl."), and Riverbay's affirmation in opposition, Dkt 14 ("Riverbay Aff.").

1

resulted from Michaux's exposure to Legionella bacteria at his home, and that this exposure was due to negligence by Riverbay and other defendants. *See* Compl. ¶¶ 104–28; Geltzer Decl. at 3.

Before Michaux's diagnosis, many other personal injury cases involving the alleged exposure by Co-Op City residents to Legionella bacteria had been commenced in Bronx Supreme Court. Geltzer Decl. at 3–4. Five have been consolidated in Bronx Supreme Court and are in pretrial discovery. *Id.* at 4. It is as yet unknown whether Michaux's LD has the same cause as the plaintiffs' LD in the consolidated cases. Riverbay Aff. ¶ 18.

### B. Michaux's Bankruptcy Filing

On May 26, 2017, Michaux filed for bankruptcy in the Southern District of New York and Geltzer was appointed a Trustee by the Bankruptcy Court. Geltzer Decl. at 3. On August 29, 2017, Michaux received a discharge from the Bankruptcy Court. *Id.*

### C. Procedural History of This Action

On August 3, 2018, Geltzer, on behalf of Michaux's bankruptcy estate, filed this personal injury suit in New York State Supreme Court (Bronx County). *Id.* On November 27, 2018, Riverbay removed the case to this Court. Dkt. 1-1. The only connection that Riverbay cited—and the only one known to this Court—between the personal injury action and Michaux's bankruptcy is that the personal injury claim is an asset of the bankruptcy estate administered by Geltzer. On November 30, 2018, Riverbay filed an Amended Notice of Removal. Dkt. 5.

On December 27, 2018, Geltzer filed a motion to remand the case to state court, Dkt. 11, and an accompanying memorandum of law, Dkt. 12 ("Pl. Mem."). On January 10, 2019, Riverbay filed an affirmation in opposition to the motion to remand. Dkt. 14.[3]

---

[3] Riverbay filed an affidavit of service of the Amended Notice of Removal by mail on the other defendants on November 29, 2018. Dkt. 4.

## II. Applicable Legal Standards

### A. Bankruptcy Jurisdiction

Claims related to bankruptcy proceedings may be removed to federal court only "if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Under § 1334, "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* § 1334(b). District courts are therefore empowered to hear and decide all matters "arising under," "arising in" cases under, and "related to" cases under title 11. *Id.* § 1334(b).

To "arise under" title 11, a claim "must be predicated on a right created by a provision of title 11." *World Travel Vacation Brokers, Inc. v. The Bowery Savings Bank (In re Chargit Inc.)*, 81 B.R. 243, 247 (Bankr. S.D.N.Y. 1987). To "arise in" title 11 proceedings, a claim need not be "based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* Finally, a case "related to" one under title 11 can include any proceeding the outcome of which "could conceivably have any effect on the estate being administered in bankruptcy." *Id.* Courts have read "related to" jurisdiction as broad but not boundless. *See, e.g., Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (while bankruptcy courts should be empowered to hear a wide array of proceedings connected to bankruptcies, "related-to jurisdiction cannot be limitless").

### B. Mandatory and Permissive Abstention

District courts must abstain from hearing any case "related to a case under title 11"— provided the case does not also arise under or in a case under title 11—with respect to which an action could not have been commenced in [federal court] absent jurisdiction under this section." 28 U.S.C. § 1334(c)(2).

3

Under the doctrine of permissive abstention, a district court may decline to exercise jurisdiction over a "related to" case under § 1334(c)(1) in the interests of justice or comity, 28 U.S.C. § 1334(c)(1), and under § 1452(b) "on any equitable ground," *id.* § 1452(b). The factors for consideration of permissive abstention are the same under both provisions. *See CMM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners, LLC*, 396 B.R. 602, 607 (Bankr. S.D.N.Y. 2008).

## III. Analysis

The Court first considers the relationship between the personal injury suit brought on Michaux's behalf and the Michaux bankruptcy proceeding, finding that the former is "related to" the latter. The Court next considers whether remand of the personal injury suit to state court is either mandatory under § 1334(c)(2) or justified by equitable considerations under §§ 1334(c)(1) and 1452(b).

### A. The Personal Injury Action Is Related to Bankruptcy Proceedings

The personal injury (tort) claims brought by Geltzer against Riverbay neither arise under, nor arise in, a case under, title 11. That is because these claims are not derived from title 11 and would exist absent the bankruptcy proceedings. Michaux's LD diagnosis preceded his bankruptcy by almost two years, Geltzer Decl. at 3, and Michaux, with or without the bankruptcy filing, could have brought suit against Riverbay for negligence at any point thereafter.

The personal injury lawsuit is, however, "related to" the bankruptcy proceeding. That is because any recovery from the personal injury lawsuit will be furnished to the trustee, Geltzer, to be distributed consistent with the bankruptcy court's relevant orders, *see In re Michaux*, No. 17 B. 11474 (SHL), Dkt. 12-2 ¶ 16(f) (Affidavit of Jonathan Kashimer), and as such may "have an effect on the estate," *World Travel Vacation Brokers*, 81 B.R. at 247.

4

B.  **Mandatory Abstention**

In pursuing remand,[4] Geltzer argues that abstention is mandatory under § 1334(c)(2). "There are six requirements for mandatory abstention: (1) the motion to abstain is timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) the action can be timely adjudicated in state court." *Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 496 B.R. 706, 710 (Bankr. S.D.N.Y. 2013) (citing *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 331 (Bankr. S.D.N.Y. 2003)). The first five § 1334(c) factors are undisputedly present here. Only the last is disputed.

In assessing that factor, timely adjudication, courts in turn consider: "(1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 639 F.3d 572, 580 (2d Cir. 2011). The focus of the timely adjudication inquiry is the administration of the bankruptcy estate.

---

[4] Courts have split as to which party bears the burden of proof on a motion to remand. *Compare Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) ("[T]he party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper" (quotation marks and citation omitted)) *with In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 331 (Bankr. S.D.N.Y. 2003) (party seeking remand must prove that all six requirements for mandatory abstention are met). Without resolving this issue, the Second Circuit has stated that although "typically a party seeking relief bears the burden to show he is entitled to that relief . . . [p]lacing the burden on the party seeking remand may nevertheless be inconsistent with the mandatory nature of abstention under § 1334(c)(2)." *Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 639 F.3d 572, 582 (2d Cir. 2011). The issue here is academic: the Court finds that remand is warranted regardless of which party bears the burden.

5

Of these *Parmalat* factors, the second, third, and fourth strongly favor remand and the first is inconclusive.

As to the second, the state court is clearly more familiar with, and has or will have far more expertise as to, the issues presented by Geltzer's LD claim than does this Court. That is because state-law tort claims in general are the regular business of the state court, and also because five potentially parallel claims of LD exposure brought by fellow Co-Op City residents today are pending in Bronx County, the court in which Geltzer brought the instant LD claim. Riverbay disputes that there will necessarily be shown to be a common cause of Michaux's LD and that of the five other Co-Op City plaintiffs. But while the cases may not yield common results, there are common issues among them, including whether bacteria in (or other features of) Co-Op City accounts for residents' LD diagnoses. And the state court, through its familiarity with the earlier, similar claims of the five other residents, will surely have facility with such issues. This Court, in contrast, has not litigated an LD claim nor a tort claim of any kind involving Co-Op City.

As to the third and fourth *Parmalat* factors, the bankruptcy court has discharged the title 11 proceeding. And further administration of the estate has been left to the trustee, who brought this claim in state court. Adjudicating the LD tort claims in state court therefore will not and cannot pose any risk of prolonging the Michaux bankruptcy estate's administration or liquidation. Nor is any efficiency gained for the bankruptcy proceeding by trying those claims in federal district court.

As to the first *Parmalat* factor, the Court has not been furnished with meaningful data enabling it to assess the relative backlogs of the state court and this Court and their respective abilities to bring Michaux's LD claims to prompt conclusion. While in general courts in the

Southern District of New York have a deserved reputation for moving cases with special dispatch, the state court's experience and expertise handling LD cases—in the context of Co-Op City residents, no less—may well expedite its resolution of motions and other aspects of the instant lawsuit. The Court therefore finds this factor inconclusive.

Viewing the mandatory abstention factors in combination, they lopsidedly favor remand. The Court therefore holds that § 1334(c)(1) requires this Court to abstain from exercising jurisdiction over these state court claims. *See, e.g., Fried*, 496 B.R. at 710 (mandatory abstention warranted for complaint based wholly on state law); *Bevilacqua v. Bevilacqua*, 208 B.R. 11, 15 (Bankr. E.D.N.Y 1997) (mandatory abstention warranted for state law claims involving non-creditors to estate); *In re AOG Entm't, Inc.*, 569 B.R. 563, 585 (Bankr. S.D.N.Y. 2017) (mandatory abstention warranted for state law claims of tortious interference with contract).

### C. Permissive Abstention

Even if remand were not mandatory, the interests of justice would still compel remand under permissive abstention. Under § 1452(b), a federal court may remand a removed claim or cause of action "on any equitable ground." When considering equitable remand, courts consider the following factors: "(1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants." *CMM Pathfinder Pompano Bay, LLC*, 396 B.R. at 607.[5] These heavily favor remand here.

---

[5] As reviewed *supra* p. 4, the factors noted here apply equally to permissive abstention under § 1334(c)(1).

As to the first factor, remand of this personal injury action cannot have an adverse effect on the bankruptcy proceeding. This suit does not involve claims by a creditor against a debtor. It instead involves a claim by a bankruptcy trustee against third parties who are not involved in the bankruptcy proceeding. The decision in *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins.*, 130 B.R. 405 (Bankr. S.D.N.Y. 1991), is instructive. The defendants there removed a state law claim to federal district court, but the court declined to exercise "relating to" jurisdiction. It explained: "[W]hen the debtor is a plaintiff and has commenced state law claims against entities having no interest in the bankruptcy estate, it is appropriate to remand the matter to state court because a state court is better able to respond to a suit involving state law." *Id.* at 408. So too, here. Indeed, insofar as the plaintiff is a bankruptcy trustee who presumably has familiarity with the bankruptcy court and a vested interest in expeditiously resolving Michaux's state-law claims, his judgment merits respect as to the forum better equipped to vindicate the interests of the estate and its creditors.

The other factors also support remand. Briefly: Plaintiff's claims are based on state law. Comity favors, absent good reason, permitting a state court to resolve claims with which it is familiar; as noted, the Bronx Supreme Court has experience with LD cases brought by residents of very same housing complex as Michaux. And while the legal questions here do not yet appear unusually difficult or unsettled, there is no suggestion that a federal court has greater expertise on any question that may arise. Remand would not impair any party's jury trial right. Nor, finally, would remand prejudice any defendant. On the contrary, as Geltzer notes, most of the named defendants are also parties in the five consolidated LD cases. If anything, remand will facilitate coordination and minimize the risk of duplicative work and inconsistent outcomes.

## CONCLUSION

For the foregoing reasons, the Court grants the motion to remand this action to state court. The Clerk of Court is respectfully requested to terminate the motion pending at Dkt. 11 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: February 25, 2019
New York, New York

9